ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Abilene Retail #30, Inc., d/b/a/ Lion's Den Adult Superstore,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| vs.  ) | Case No. 09-2195-JAR |
| ) | |
| Stephen N. Six, In his Official Capacity as Kansas Attorney General,  ) | |
| ) | |
| Defendant.  ) | |

## <u>MEMORANDUM AND ORDER</u>

The Court now considers plaintiff's Motion for Preliminary Injunction (Doc. 2), which has been fully briefed. The Court held an evidentiary hearing and heard oral argument on June 4, 2009. After fully considering the written briefs, oral argument, and evidence adduced at the hearing, the Court grants the motion for preliminary injunction, as explained more fully below.

## I.     Background

Plaintiff, Abilene Retail # 30, Inc., is a corporation organized and existing under laws of the State of Ohio and licensed to do business in the State of Kansas as "Lions Den Adult Superstore" ("Lion's Den"). Defendant Stephen N. Six is the duly elected Attorney General of Kansas, who is authorized and required to represent the State in all actions arising from K.S.A. § 68-2255, the statute at issue in this case. He is sued here solely in his official capacity for purposes of obtaining declaratory and injunctive relief.

Lion's Den, located in Dickinson County, Kansas, offers adult oriented videos for sale or rent and retails DVDs, and magazines that contain sexually-oriented content. In addition to

books and videos, Lion's Den sells other items such as novelties, vibrators, clothing, lingerie, greeting cards, and a wide array of "enhancement devices."  Sabrina Breeden, a manager at Lion's Den, testified that these enhancement devices include dildos and artificial vaginas. Breeden testified that the packaging for these devices includes both pictures and text and that some contain pictures of nudity.  The enhancement devices are located to the left of the front door of the store and are presented under signs "for him," or "for her."  Breeden testified that Lion's Den markets the products they sell to those interested in "a healthy sex life" and not to those with a "prurient interest in sex."

K.S.A. § 68-2255(b)-(d) provides:

(b) No sign or other outdoor advertising, for an adult cabaret or sexually-oriented business shall be located within one mile of any state highway except if such business is located within one mile of a state highway then the business may display a maximum of two exterior signs on the premises of the business, consisting of one identification sign and one sign solely giving notice that the premises are off limits to minors. The identification sign shall be no more than 40 square feet in size and shall include no more than the following information: Name, street address, telephone number and operating hours of the business.
(c) Signs existing at the time of the effective date of this act, which did not conform to the requirements of this section, and amendments thereto, may be allowed to continue as a nonconforming use, but should be made to conform within three years from July 1, 2006.
(d) Any owner of such a business who violates the provisions of this section shall be guilty of a class C misdemeanor. Each week a violation of this section continues to exist shall constitute a separate offense.

"Sexually-oriented business" is defined by the statute as follows: "any business which offers its patrons goods of which a substantial portion are sexually-oriented materials. Any business where more than 10% of display space is used for sexually-oriented materials shall be presumed to be a sexually-oriented business."[1]

---

[1]§ 68-2255(a)(4).

"Sign" or "outdoor advertising" means "any outdoor sign, display, device, notice, bulletin, figure, painting, drawing, message, placard, poster, billboard or other thing which is designed, intended or used to advertise or inform, any part of the advertising or informative contents of which is located within an adjacent area, and is visible from the state highway."[2]

K.S.A. § 68-2255 was enacted by the Kansas Legislature and approved by the Governor on April 18, 2006.[3]  Senator Tim Huelskamp testified before the Senate Federal and State Affairs Committee about the bill on February 20, 2006, arguing that sexually-oriented businesses have a negative impact on Kansas families, as signs "advertising sexually-oriented business—some of them sexually explicit—are able to continue to line Kansas highways. . . .  Instead of leaving tender and private discussions to the times that a mother and father deem appropriate, exposure to these graphic billboards violates our family hopes and standards."[4]  Phillip Cosby also testified before this committee and presented the committee members with certain evidence about the negative secondary effects of sexually-oriented business ("Increased Crime, Increased STDs, Property Devaluation & General Blight").[5]  Joe Nold, a resident of Dickinson County, testified about the negative effects of Lion's Den in that county.  The final version of the bill includes the following statement:

> (e) This section is designed to protect the following public policy
> interests of this state, including, but not limited to:
> (1) To mitigate the adverse secondary effects of sexually-oriented
> businesses; (2) to improve traffic safety; (3) to limit harm to

---

[2]§ 68-2255(a)(6).

[3]2006 Kan. Sess. Laws 140.

[4](Def. Ex. 104.)

[5]The referenced evidence was not submitted to the Court for the record in this matter.

3

> minors; and (4) to reduce prostitution, crime, juvenile delinquency, deterioration in property values and lethargy in neighborhood improvement efforts.

Plaintiff maintains, in Dickinson, Geary and Russell counties, signs and outdoor advertising, within the meaning of K.S.A. § 68-2255(a)(6), within one mile of various state highways, the maintenance of which will be a misdemeanor crime on and after July 1, 2009. Plaintiff also wishes to erect, lease, develop and maintain other off-site outdoor signs and advertising, within one mile of state highways, to advertise the existence and location of its business.

Specifically, plaintiff submits evidence that it displays three (3) billboards along I-70 in Dickinson, Geary, and Russell counties.  None of the billboards contain images; however, the company logo appears on two of the billboards.  They all display yellow block letters on a black background stating that an adult "superstore" named Lion's Den is located at Exit 272.  The on-premises signs are as follows: (1) a sign on the roof containing the company logo, "Adult Books and Videos, The Adult Superstore for Men and Women"; (2) a parking lot sign that states "Adult Superstore" in block letters; (3) a sign on the door warning potential patrons not to enter if they are offended by sexually explicit materials and stating that minors are prohibited from entering the store and stating that photo ID will be required for potential customers; (4) a sign by the door notifying customers that the store is closed between midnight and 6:00 a.m. daily, in compliance with local law; and (5) other signs such as those for an emergency exit, those stating that loitering is prohibited, and those advertising which credit cars are accepted by the business.

Plaintiff's business is located immediately adjacent to an exit ramp for Interstate

Highway I-70, and is located within one mile of Interstate Highway I-70.   At the hearing,

Breeden testified that the billboards are an important form of advertising for Lion's Den because

it is the only way to reach its main potential customers—those traveling along the interstate.

Breeden testified that Lion's Den patrons include both married and single people who are

interested in "a healthy sex life."

In November 2003, the citizens of Dickinson County convened a grand jury to

investigate whether there was probable cause to believe that Lion's Den violated the Kansas

obscenity statute.  That statute currently provides:

> (a) Promoting obscenity is knowingly or recklessly:
>     (1) Manufacturing, issuing, selling, giving, providing, lending, mailing, delivering, transmitting, publishing, distributing, circulating, disseminating, presenting, exhibiting or advertising any obscene material or obscene device;
>     (2) possessing any obscene material or obscene device with intent to issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit or advertise such material or device;
>     (3) offering or agreeing to manufacture, issue, sell, give, provide, lend, mail, deliver, transmit, publish, distribute, circulate, disseminate, present, exhibit or advertise any obscene material or obscene device; or
>     (4) producing, presenting or directing an obscene performance or participating in a portion thereof which is obscene or which contributes to its obscenity.[6]

 "Obscene device" is defined in § 21-4301(c)(3) as "a device, including a dildo or artificial

vagina, designed or marketed as useful primarily for the stimulation of human genital organs,

except such devices disseminated or promoted for the purpose of medical or psychological

therapy."

---

[6]K.S.A. § 21-4301.

5

The grand jury issued an amended indictment, alleging Lion's Den disseminated "obscene devices" under the statute.  The state district court dismissed the indictment due to defects in the citizen petition that led to the convening of the grand jury.  In 2004, the County Attorney re-filed charges alleging substantially similar crimes in a "complaint/information."  That case was ultimately dismissed, as the district court judge found that the statute as then written was unconstitutional under Kansas precedent.[7]

Plaintiff filed the Complaint in this matter, alleging facial and as-applied challenges to K.S.A. § 68-2255.  Plaintiff claims that the statute violates the First and Fourteenth Amendments by prohibiting off-premises signs near state highways and by limiting the display of on-site signs for those businesses located within one mile of a state highway.  Plaintiff seeks declaratory and injunctive relief.  In its motion, plaintiff asks for a preliminary injunction prohibiting the Kansas Attorney General from enforcing the provision of K.S.A. § 68-2255 that restricts on-premises and off-premises outdoor advertising by sexually-oriented businesses located within one mile of a state highway in Kansas, pending final judgment in this matter.

## II.    Preliminary Injunction Standard

To obtain a preliminary injunction, the moving party must show a clear and unequivocal right to relief.[8]  The moving party must establish the following elements: (1) a substantial

---

[7]Specifically, the Dickinson County district court found that one of the constitutional defects identified by the Kansas Supreme Court in *Kansas v. Hughes*, 246 Kan. 607 (1990), had not been removed by the Legislature despite the fact that it had been amended twice after that decision.  At the time, the statute included language that "[e]vidence that materials or devices were promoted to emphasize their prurient appeal or sexually provocative aspect shall be relevant in determining the question of the obscenity of such materials or devices."  *Hughes* struck down as unconstitutional the statute to the extent it impermissibly equated sexuality with obscenity and because it did not provide an exception for therapeutic use.  The Legislature amended the statute in the wake of *Hughes* to add in a therapy exception, but did not strike the "sexually provocative aspect" language from the statute until 2006, after the complaint/information was dismissed against Lion's Den.

[8]*SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991).

likelihood of success on the merits; (2) a showing of irreparable injury  unless the injunction

issues; (3) proof that the threatened injury to the movant outweighs whatever damage the

proposed injunction may cause the opposing party; and (4) a showing that the injunction, if

issued, would not be adverse to the public interest.[9]  In cases where the movant has prevailed on

the other factors, the Tenth Circuit generally uses a liberal standard for "probability of success

on the merits," so the moving party need only raise "questions going to the merits so serious,

substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more

deliberate investigation."[10]

There are three types of injunctions that are disfavored in the Tenth Circuit, and thus,

must satisfy a heightened burden.  Those injunctions are: (1) preliminary injunctions that alter

the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford

the movant all the relief that it could recover at the conclusion of a full trial on the merits.[11]  If an

injunction falls into one of these categories, it "must be more closely scrutinized to assure that

the exigencies of the case support the granting of a remedy that is extraordinary even in the

normal course.  Furthermore . . . movants seeking such an injunction are not entitled to rely on

this Circuit's modified-likelihood-of-success-on-the-merits standard."[12]  Neither party argues

that the requested injunction qualifies as a "disfavored injunction" that would require application

of a heightened standard.

---

[9]*E.g.*, *id.*; *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

[10]*Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980) (internal quotations omitted).

[11]*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 389 F.3d 973, 975 (10th Cir. 2004) (per curiam), *aff'd*, 126 S. Ct. 1211 (2006); *see also Schrier*, 427 F.3d at 1258–59.

[12]*O Centro*, 389 F.3d at 975–76.

### III.    Likelihood of Success on the Merits

Commercial speech is "expression related solely to the economic interests of the speaker and its audience."[13]  The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted government regulation.[14]  The Supreme Court has acknowledged that commercial speech enjoys lesser protection than other constitutionally guaranteed expression; the degree of protection turns on "the nature of both the expression and of the governmental interests served by its regulation."[15]  There are "serious First Amendment concerns that attend blanket advertising prohibitions that do not protect consumers from commercial harms."[16]  The Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Services Commission* set forth a four-part test that applies to commercial speech regulations.[17]  The Court applies this test to the Kansas signage statute, as it prohibits off-premises and on-premises advertising for sexually-oriented businesses.[18]

The *Central Hudson* test asks the following: (1) whether the expression is protected by the First Amendment (*i.e.*, whether it is a prohibition against truthful, nonmisleading speech

---

[13]*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561 (1980).

[14]*Id.*

[15]*Id.* at 563.

[16]*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 499 (1996).

[17]447 U.S. at 566.

[18]Plaintiff urges strict scrutiny should apply here because the signage statute would also prohibit non-economic speech such as political speech; however, all courts to address similar statutes have applied the *Central Hudson* test, and plaintiff spends the bulk of its brief addressing that analysis.  *See, e,g.*, *Passions Video, Inc. v. Nixon*, 458 F.3d 837, 842, n.5 (8th Cir. 2006); *Carolina Pride v. McMaster*, No. 3:08-4016-CMC, 2009 WL 238206, at * 6 (D.S.C. Jan. 30, 2009); *Georgia v. Café Erotica*, 507 S.E.2d 732, 734 (Ga. 1998); *Hamilton Amusement Ctr. v. Verniero*, 716 A.2d 1137, 1142–43 (N.J. 1998). Because the Court finds that plaintiff has established a substantial likelihood of success on the merits under an intermediate form of scrutiny, it need not address whether it has a substantial likelihood of success under a strict scrutiny analysis.

about a lawful product); (2) whether the asserted governmental interest is substantial; (3) whether the regulation directly advances the governmental interest asserted; and (4) whether it is not more extensive than necessary to serve that interest.[19]

> A.     **First Prong**

Defendant contends that plaintiff cannot show a substantial likelihood of success on the merits because, while Lion's Den sells many lawful products, it also sells certain unlawful products under Kansas law.  Specifically, defendant argues that plaintiff sells "obscene devices," which creates a triable issue about whether Lion's Den is "promoting obscenity as to sexual devices" in violation of K.S.A. § 21-3401(a).  Plaintiff responds that, (1) the operation of an adult bookstore is a constitutionally protected activity; (2) the advertisements do not concern unlawful activity; (3) previous attempts to prosecute Lion's Den for violating the obscenity statute have failed; (4) the obscenity statute is unconstitutional; and (5) the sale of sexual devices under certain circumstances is legal under the obscenity statute.

Before the Supreme Court determined that commercial speech was constitutionally protected, it decided *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*,[20] where it held that, assuming commercial speech was protected, advertising that proposed an illegal transaction is not protected.[21]  When the Court later determined that commercial speech enjoyed First Amendment protection, it incorporated the *Pittsburgh Press* legal activity

---

[19]*Central Hudson*, 447 U.S. at 566.

[20]413 U.S. 376 (1973).

[21]*Id.* at  388–89.

requirement into the analysis.[22]  The proper inquiry is "the legality of the *transactions proposed*

by the advertising . . . ."[23]  In addition, the Supreme Court has found that the government may

regulate speech proposing or encouraging an illegal transaction.[24]

In *Lamar Outdoor Advertising, Inc.*, the Fifth Circuit discussed the legal activity

requirement for commercial speech protection as it applied to a Mississippi statute that regulated

advertisements for alcoholic beverages.[25]  The defendant argued that the proposed liquor

advertisements concerned illegal activity because under Mississippi law, the sale, transportation,

and possession of liquor is completely illegal in most counties in the state.[26]  The Fifth Circuit

disagreed, finding that there is no claim that the plaintiffs' advertisements would propose an

illegal transaction—an unlawful sale or purchase of liquor—as the advertisements assume the

transactions will occur in so-called "wet" counties.[27]  The Fifth Circuit also declined to find that

liquor advertising would encourage illegal activity, finding:

> By contrast to the statute in *Flipside*, the Mississippi regulatory
> scheme is not directed at commercial speech that by its terms
> intentionally or actively promotes illegal activity. Mississippi does
> not ban only advertising that promotes or encourages violation of
> the Local Option Law; rather it prohibits all intrastate liquor
> advertising.  No claim has been made, nor could one have been

---

[22]*See Va. State Bd. of Pharmacy v. Va. Citizens Consumer*, 425 U.S. 748, 771 (1976) (explaining that some forms of commercial speech regulation are permissible, such as when "the transactions proposed in the forbidden advertisements are themselves illegal . . . .").

[23]*Lamar Outdoor Adver., Inc. v. Miss. St. Tax Comm'n*, 701 F.2d 314, 321 (5th Cir. 1983).

[24]*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 496–97 (1982) (upholding ordinance that restricted display and marketing of items for use with illegal cannabis or other drugs without obtaining a license).

[25]*See Lamar Outdoor Adver., Inc.*, 701 F.2d at 316–18.

[26]*Id.* at 320.

[27]*Id.* at 321.

made, that all liquor advertising actively promotes illegal activity.
We must therefore conclude that Mississippi has prohibited
protected commercial speech.[28]

In *Katt v. Dykhouse*,[29] the Sixth Circuit considered the legal activity requirement for

protected commercial speech.  In that case, the plaintiff, an insurance agent, sought to advertise

that he offered his clients a rebate for his commission.[30]  The speech concerned a commercial

transaction that is lawful in Florida, the place where the transaction was to take place, but illegal

in Michigan, where the offer was to take place.[31]  The defendant argued that the plaintiff's rebate

offer proposed to conduct an illegal transaction "because Michigan law bans the *offering* and

*solicitation* of an insurance rebate as well as the rebate itself."[32]  The Sixth Circuit disagreed,

stating:

> We conclude that the defendants' argument is a mere
> tautology: Katt's offer to rebate in Florida concerns an unlawful
> activity because Michigan has outlawed offers to rebate. The
> proper inquiry under the first prong of the *Central Hudson* test is
> whether the underlying commercial transaction is lawful. If so, the
> speech is entitled to "some constitutional protection."
> Since rebating is permitted in Florida, Katt's proposed
> commercial activity is lawful. Therefore, his offers to rebate in
> Florida pass the first prong of the Central Hudson test.
> Accordingly, the defendants' motion to dismiss must be denied.[33]

The Court finds these cases instructive on how to treat the legality requirement of the

---

[28] *Id.*

[29] 983 F.2d 690 (6th Cir. 1992).

[30] *Id.* at 691–92.

[31] *Id.*

[32] *Id.* at 696.

[33] *Id.* at 697 (citation omitted).

first prong of *Central Hudson* when the underlying transaction proposed could be either legal or illegal.  The Court is required to focus on the proposed transaction in making this determination; here, the purchase or rental of products offered for sale or rent at Lion's Den.  As the record stands today, Lion's Den has submitted evidence that it markets the products they sell to those interested in "a healthy sex life" and not to those with a "prurient interest in sex."  Furthermore, there are no currently pending criminal charges against plaintiff based on these allegations.  As with the statutes at issue in *Lamar Outdoor Advertising, Inc.* and *Katt*, the underlying transaction here involves lawful products.[34]

Defendant does not contend, nor can it, that all of the goods for sale at Lion's Den are unlawful.[35]  In fact, under the Kansas obscenity statute, there is an exception for obscene devices that are disseminated or promoted for the purpose of medical or psychological therapy.[36]  Like the statute at issue in *Lamar Outdoor Advertising, Inc.*, the signage statute here  not only bans advertising that promotes the sale of products that violate the obscenity statute, but  all advertising, regardless of whether the proposed transaction is for legal or illegal products.  Because defendant acknowledges, as it must, that not all of the products offered for sale at Lion's Den are illegal, its claim that the advertising necessarily proposes an illegal transaction is misplaced.  Given this finding, there is no need for the Court to pass on the constitutionality of a

---

[34]In contrast, the statute upheld in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 496–97 (1982), only targeted the marketing of products "designed or marketed for use with illegal cannabis or drugs."  By its very terms, that speech would only propose an illegal transaction, *id.* at 496, as the same products marketed for legal uses would not fall within the scope of the regulation.

[35]*See Miller v. California*, 413 U.S. 15, 23–24 (1973); *Smith v. California*, 361 U.S. 147, 150 (1959).

[36]*See* K.S.A. § 21-4301(c)(3); *see also State v. Hughes*, 792 P.2d 1023, 1032 (Kan. 1990) (holding that the dissemination and promotion of such devices for purposes of medical and psychological therapy is a constitutionally protected activity).

12

statute not before it.[37]

### B.    Second Prong

The Court must "identify with care the interests the State itself asserts."[38]  The State

clearly sets forth its asserted interests in the text of the statute: (1) to mitigate the adverse

secondary effects of sexually-oriented businesses; (2) to improve traffic safety; (3) to limit harm

to minors; and (4) to reduce prostitution, crime, juvenile delinquency, deterioration in property

values and lethargy in neighborhood improvement efforts.[39]  In its response brief, the State

asserts that it has a substantial interest in reducing illegal activity.  The Court assumes for

purposes of its analysis that the State can establish that these are substantial interests.[40]

### C.    Third Prong

The Court next turns to the third step of the *Central Hudson* analysis, concerning "the

relationship between the harm that underlies the State's interest and the means identified by the

State to advance that interest."[41]  The Supreme Court has stated that "a commercial speech

---

[37]*See, e.g.*, *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 747 (5th Cir. 2008) (striking down prohibition on the sale of sexual devices on substantive due process grounds; remanding for determination on commercial speech aspect of challenged statute); *This That & the Other Gift & Tobacco, Inc. v. Cobb County, Ga.*, 285 F.3d 1319, 1324 (11th Cir. 2002) (concluding district court erred in finding that plaintiffs did not show a substantial likelihood of success on the merits of their commercial speech challenge to obscenity statute that prohibited advertising of sexual devices).  *But cf.*, *United States v. Harb*, No. 07–CR-426, 2009 WL 499467, at 2 (D. Utah Feb. 27, 2009) (declining to extend substantive due process right recognized in *Lawrence v. Texas*, 529 U.S. 558 (2003) beyond its facts).

[38]*Edenfield v. Fane*, 507 U.S. 761, 768 (1993).

[39]K.S.A. § 68-2255(e).

[40]*See Abilene Retail #30, Inc. v. Bd. of Commr's of Dickinson Cty., Kan.*, 492 F.3d 1164, 1170–71 (10th Cir. 2007) (finding adverse secondary effects of sexually-oriented business is a constitutionally valid motivation for a zoning ordinance); *Passions Video, Inc. v. Nixon*, 458 F.3d 837, 843 (8th Cir. 2006) (finding Missouri's stated interest in minimizing the secondary effects of sexually-oriented businesses substantial).

[41]*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001).

regulation may not be sustained if it provides only ineffective or remote support for the government's purpose."[42]  Instead, because the statute constitutes an outright ban on off-premises advertising, the State must show that the signage statute will significantly further its stated interests.[43]  The regulation cannot be sustained by speculation or conjecture.[44]  The level of proof required to justify speech restrictions is liberal; litigants may "reference studies and anecdotes pertaining to different locales altogether, or even, in a case applying strict scrutiny, to justify restrictions based solely on history, consensus, and 'simple common sense.'"[45]

The State has proffered some evidence in the form of legislative history that the signage statute will advance the State's interests.  Phillip Cosby testified before the Senate Federal and State Affairs Committee, presenting the committee members with certain evidence about the negative secondary effects of sexually-oriented business ("Increased Crime, Increased STDs, Property Devaluation & General Blight").[46]  Joe Nold, a resident of Dickinson County, testified about the negative effects of a sexually-oriented business in that county.  Other courts addressing similar statutes have found some evidence of a connection between the regulations and state interests in reducing the secondary effects of sexually oriented businesses and increasing traffic safety.[47]

---

[42]*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996).

[43]*Id.*

[44]*Lorillard Tobacco Co.*, 533 U.S. at 555.

[45]*Id.*

[46]The Attorney General did not proffer this underlying evidence at the evidentiary hearing, only the record of Cosby's testimony.

[47]*See Passions Video, Inc. v. Nixon*, 458 F.3d 837, 842 (8th Cir. 2006) ("restricting the amount of advertising by the affected businesses would reduce the number of customers that patronize the affected business, thus reducing profits, and ultimately forcing the affected business to close."); *Georgia v. Café Erotica*, 507 S.E.2d

The Attorney General asks the Court to rely on other cases construing similar statutes that find the third prong satisfied.  Specifically, he points the Court to the New Jersey Supreme Court's decision in *Hamilton Amusement Ctr. v. Verniero*,[48] finding a regulation of on-premises signs advanced that state's interests in limiting negative secondary effects, increased traffic safety and protection of the welfare of minors.[49]  The Court finds this case inapplicable for the following reasons.  First, the statute at issue in *Hamilton Amusement Ctr.* does not involve an outright ban on off-premises advertising as the statute before this Court does.  Such an outright ban requires a showing that the signage statute will *significantly* further its stated interests, a slightly higher burden.[50]  One example of the importance of this distinction is that the New Jersey case addressed the traffic safety concern only in the context of traffic immediately outside the business, as opposed to highway traffic.  As a result, the Court is unable to rely on that case alone to find that this law that entirely bans off-premises signs and advertising advances the State's interest in traffic safety.  The Attorney General has not submitted any evidence at this stage of the proceeding to support the rationale that banning signs that bear only the name and location of a sexually-oriented business will increase traffic safety by any measure, much less significantly.[51]

---

732, 734–35 (Ga. 1998) ("relying on the common sense of the legislature that billboards pose substantial hazards to traffic safety).

[48] 716 A.2d 1137 (N.J. 1998).

[49] *Id.* at 1147.

[50] *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996) ("given the drastic nature of its chosen means—the wholesale suppression of truthful, nonmisleading information[,] . . . we must determine whether the State has shown that the price advertising ban will *significantly* reduce alcohol consumption.").

[51] *See Carolina Pride v. McMaster*, No. 3:08-4016-CMC, 2009 WL 238206, at * 10 (D.S.C. Jan. 30, 2009); *see also Rappa v. New Castle County*, 18 F.3d 1043, 1082 (3d Cir. 1994) (finding that allowing some signs but not others is evidence that the government's asserted interests in traffic safety and aesthetics is not sufficiently

Second, the Tenth Circuit has recently called into question "the connection between secondary effects attendant to Dickinson County's existing sexually oriented business(es)" in a case brought by this plaintiff.[52]  The Tenth Circuit case addresses the constitutionality of zoning ordinances targeting sexually-oriented businesses in Dickinson County, in the context of a summary judgment appeal under an intermediate form of scrutiny.  The court determined that the record showed a material dispute of fact exists as to whether the Board has established a connection between the zoning ordinance and the secondary negative effects of the business.[53] The County relied upon numerous studies in other locales to support its contention that the ordinances sought to limit the negative secondary effects of sexually-oriented businesses.[54]  The Tenth Circuit noted that the studies relied upon by the Board on anticipated negative secondary effects did not appear to apply to sexually-oriented businesses located in rural counties, such as plaintiff.[55]  Further, the studies did not appear to provide a rationale for many of the contents of the challenged ordinances.[56]  While the Court  recognizes that this evidence of negative secondary effects was presented to the Tenth Circuit in a different posture than a request for preliminary injunction, it weighs heavier in this Court's analysis about the connection between this State's interest in reducing negative secondary effects and the regulation, than the case from New Jersey cited by defendant.  In contrast to the zoning ordinance case, the Attorney General

---

compelling to justify disparate treatment between classes of speech).

[52]*Abilene Retail #30, Inc. v. Bd. of Comm'rs of Dickinson Cty., Kan.*, 492 F.3d 1164, 1176 (10th Cir. 2007).

[53]*Id.*

[54]*See id.* at 1177 nn. 7–9.

[55]*Id.* at 1177.

[56]*Id.* at 1177–78.

16

has provided this Court with absolutely no anecdotal evidence of negative secondary effects associated with sexually-oriented businesses aside from the conclusory statements by the sponsor of the bill, a lobbyist, and a resident of Dickinson County, with no supporting documentation.  At this stage of the proceedings, the Court is unable to conclude, based on the limited record, that the State could establish that its outright ban on off-premises advertising and limitation of on-premises signage will significantly further its interests in reducing the negative secondary effects caused by sexually-oriented businesses.

With regard to the State's interest in safety to minors, the New Jersey Supreme Court found that the requirement that businesses post a sign indicating that they are off-limits to minors helps to ensure minors will be excluded from the premises.[57]  But under the Kansas statute, this is not set forth as a requirement for all sexually-oriented business, it is merely allowed as part of the exception to the general ban on signs and outdoor advertising "for" sexually-oriented businesses and applies only to those businesses located within one mile of a state highway.[58]  Assuming signs and outdoor advertising for sexually-oriented businesses increase the chances that minors will attempt to patronize those businesses, there is no evidence of a "direct and material link" to an all-out ban on signs, including those that merely include the name and location of the business.  For all of these reasons, the Court finds, based on the bare record before it, that plaintiff has a substantial likelihood of success on the merits with regard to the third prong of *Central Hudson*.

### D.      Fourth Prong

---

[57]*Hamilton Amusement Ctr. v. Verniero*, 716 A.2d 1137, 1147 (N.J. 1998).

[58]K.S.A. § 68-2255(b).

Assuming the Attorney General could meet his burden under the third prong of *Central Hudson*, he must show under the fourth prong that the State's restriction on commercial speech is no more extensive than necessary.[59]  Least restrictive means is not the standard, "the case law requires a reasonable 'fit between the legislature's ends and the means chosen to accomplish those ends, . . . a means narrowly tailored to achieve the desired objective.'"[60]

1.      Off-Premises Ban

The commercial speech regulation set forth in K.S.A. § 68-2255(b) provides the following general rule: "No sign or other outdoor advertising for an adult cabaret or sexually oriented business shall be located within one mile of any state highway . . . ."  With regard to this off-premises ban, plaintiff argues that it is a wholesale ban on advertising that requires an especially critical review.  The Court agrees that this regulation bans all off-premises signs and advertising located within one mile of any state highway and therefore, it should be reviewed with "special care."[61]  While the statute allows off-premises signs and advertising one-mile away from state highways, the Court finds that this is a virtual ban on off-premises advertising (i.e. billboards), as there is no evidence that advertising away from a state highway would serve any function.  Indeed, Ms. Breeden, the Lion's Den manager, testified that the business relies heavily on this form of advertising as it is the only way to reach mobile customers traveling across I-70.

Assuming without deciding that the State could show that the ban on advertising significantly advances its various interests, the Court finds it unlikely that an outright ban on off-

---

[59]*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 507 (1996).

[60]*Lorillard Tobacco Co.*, 533 U.S. at 556 (quoting *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995)).

[61]*See 44 Liquormart, Inc.*, 517 U.S. at 502–04.

premises advertising will be found to be narrowly drawn to achieve the State's objectives set forth in the statute. "The availability of obvious and numerous less-burdensome alternatives to the restriction factors into the consideration of whether the 'fit' is reasonable."[62]  As the Eight Circuit noted in considering this question as applied to an identical statute,

> [I]t threatens criminal prosecution for the mere inclusion of the name or address of an affected business on billboards within one mile of a state highway. . . .  The prohibition is directed at speech beyond that which would lead to the stated secondary effects and is not narrowly tailored to achieve Missouri's stated goal.[63]

The Court agrees.  The statute broadly sweeps any speech that is "for" a sexually-oriented businesses, whether or not that speech is obscene or relates to the sale of constitutionally protected products such as books and magazines.  Indeed, Senator Huelskamp was explicitly concerned about "graphic billboards" in his comments to the Senate Committee that considered the signage bill.  Yet, the statute does not limit the advertising ban to obscene language or images.  It is apparent that such an outright ban is not narrowly tailored to address this concern.

Plaintiff argues that the ban on off-premises signs would sweep political speech as well as commercial speech.  One such example cited at the hearing was "Lion's Den Adult Superstore Supports the Troops." The Attorney General responded at the hearing that the Legislature did not intend to ban political speech, but conceded that any sign that stated the name of the business, along with political speech, would be "for" a sexually-oriented business and, thus, illegal under the statute.  The statute is not tailored to address obscene languages or images, but is an outright ban on signs that merely state the name and location of a business, or any sign "for" a sexually-

---

[62]*Passions Video, Inc. v. Nixon*, 458 F.3d at 843 (citing *Went for It, Inc.*, 515 U.S. at 632).

[63]*Id.* at 843.

oriented business that also contains protected political speech.[64]  The scope of the statute does

not "demonstrate a careful calculation of the speech interests involved."[65]  As such, plaintiff has

shown a likelihood of success on the merits of its claim that the ban on off-premises signs and

advertising will fail the *Central Hudson* test.

      2.        On-premises Limitation

      The statute provides an exception to the general rule for businesses located within one

mile of a state highway.  Such businesses "may display a maximum of two exterior signs on the

premises . . . consisting of one identification sign and one sign solely giving notice that the

premises are off limits to minors."[66]  The statute defines the specific information that may be

displayed on the identification sign and specifies the maximum size of the sign.

      The Court finds that plaintiff has established a likelihood of success on the merits that

this portion of the statute also fails the fourth prong of the *Central Hudson* test.  While the Court

disagrees that advertising for unrelated business would be unlawful under the statute, it is

obvious that the statute sweeps far more speech than is necessary to achieve the State's

objectives.  The plain language of the statute makes clear that the exception for on-premises

signs and advertising modifies the general rule governing signs and advertising "for" adult

cabarets or sexually-oriented businesses.  Therefore, plaintiff's fears of prosecution for signs

such as those showing which credit cards Lion's Den accepts, or those advertising its sale of

---

[64]*See Erznoznik v. Jacksonville*, 422 U.S. 205, 207 (1975) ("Speech that is neither obscene as to youths, nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them.  In most circumstances, the values protected by the First Amendment are no less applicable when government seeks to control the flow of information to minors.").

[65]*Lorillard Tobacco Co.*, 533 U.S. at 562.

[66]K.S.A. § 68-2255.

Pepsi are misplaced.  While those displays may meet the statutory definition of "sign" or "outdoor advertising," they are not "for" the sexually-oriented business.  Instead, they are "for" VISA, or Mastercard, or Pepsi.

However, the Attorney General concedes that any sign that contains the name of the sexually-oriented business, aside from the one identification sign allowable under the exception, would be illegal under the statute.  Like the off-premises ban, political speech would be prohibited on on-premises signs so long as they are "for" the sexually-oriented business, i.e., they contain the name of the business.  Also, many of the signs that are currently displayed on the Lion's Den building violate the statute: (1) the sign posting its hours that is required by local ordinance, (2) the no loitering signs; and (3) the emergency exit signs.  The Court finds this to be strong evidence that the limitations for on-premises signs and advertising is more extensive than necessary for the State to achieve the public policy goals set forth in the statute.  There are certainly numerous alternatives that would not burden an unnecessary amount of speech.

Defendant asks the Court to rely on a decision from the New Jersey Supreme Court upholding a New Jersey statute that regulates on-premises signs and advertising for sexually-oriented businesses.[67]  The New Jersey statute prohibited any sexually-oriented business from displaying "more than two exterior signs, consisting of one identification sign and one sign giving notice that the premises are off limits to minors.  The identification sign shall be no more than 40 square feet in size."[68]  The Court respectfully disagrees with the rationale of that decision with regard to the fourth prong of *Central Hudson*.  The court found that the statute was not

---

[67]*Hamilton Amusement Ctr. v. Verniero*, 716 A.2d 1137, 1142–43 (N.J. 1998).

[68]N.J. Stat. Ann. § 2C:34-7, *quoted in Hamilton Amusement Ctr.*, 716 A.2d at 1141.

substantially broader than necessary because, among other things, it "does not proscribe other modes of advertisement" and it "does not place any significant limitation on what might be advertised on the two signs."[69]  With regard to other forms of advertisement, there was evidence submitted to this Court that outdoor advertising is the most important and effectual advertising available to plaintiff's business, as it is located within one mile of a state highway and relies on customers who travel along the interstate.

Moreover, the Court disagrees that the statute does not place a significant limitation on the content of the two allowable signs; in fact it dictates in specific terms what those signs may display.  The New Jersey Supreme Court relied heavily on the fact that other cases have upheld bans on advertising that involved more stringent size restrictions.[70]  But this Court finds that the sweeping regulation of the signs' content captures far more protected speech than is necessary for the State to achieve its goals in this case.  To be sure, the regulations at issue in *Excalibur Group, Inc.*, relied upon by the New Jersey Supreme court, did not implicate the content of the exterior signs at issue.[71]  The Court is more persuaded by the findings made by the Eighth Circuit with regard to the Missouri statute that is nearly identical to the statute before this Court.  The Court concurs that "this provision is not narrowly drawn to meet the state's asserted goals, and thus fails to meet the fourth step of the *Central Hudson* test."[72]

---

[69]*Hamilton Amusement Ctr.*, 716 A.2d at 1148.

[70]*See id.* at 1148 (comparing size restrictions in New Jersey statute to those upheld in *Excalibur Gr., Inc. v. City of Minneapolis*, 116 F.3d 1216 (8th Cir. 1997) and *Borrago v. City of Louisville*, 456 F. Supp. 30 (W.D. Ky. 1978)).

[71]*Excalibur Gr., Inc.*, 116 F.3d at 1218–19; *see also Passions Video, Inc. v. Nixon*, 458 F.3d 837, 844 n.7 (8th Cir. 2006) (declining to find *Excalibur Gr., Inc.* to be more restrictive than the Missouri signage statute because the regulation in *Excalibur* did not involve the content of exterior signs).

[72]*Passions Video, Inc. v. Nixon*, 458 F.3d at 843.

IV.     **Remaining Factors**

   A.      *Irreparable Injury*

Having determined that plaintiff has established a substantial likelihood of success on the merits, the Court now turns to the second factor to consider on a motion for preliminary injunction, whether plaintiff will suffer irreparable harm if the preliminary injunction is not imposed.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[73]  Plaintiff has met its burden of demonstrating that protected speech will be curtailed if the preliminary injunction is not granted because the Kansas signage statute impermissibly regulates commercial speech.

Furthermore, plaintiffs will suffer irreparable injury if the statute is enforced after July 1, 2009, as the statute allows non-conforming signs that existed at the time of the effective date of the law to continue until three years from July 1, 2006.[74]

   B.  *Harm to Others*

The Court also agrees that the threatened injury to plaintiff outweighs any injury to defendant if a preliminary injunction is issued. In fact, the Attorney General makes no attempt to establish that it will suffer harm if the preliminary injunction is granted, and concedes that the success of plaintiff's motion turns on the likelihood of success on the merits analysis.

   C.  *Public Interest*

The Court also finds that issuing a preliminary injunction is not adverse to the public interest.  As the Supreme Court expressed in *44 Liquormart, Inc.*:

---

[73]*Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 (10th Cir. 2005).

[74]K.S.A. § 68-2255(c).

Precisely because bans against truthful, nonmisleading commercial speech rarely seek to protect consumers from either deception or overreaching, they usually rest solely on the offensive assumption that the public will respond "irrationally" to the truth. The First Amendment directs us to be especially skeptical of regulations that seek to keep people in the dark for what the government perceives to be their own good. That teaching applies equally to state attempts to deprive consumers of accurate information about their chosen products . . . .[75]

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Motion for Preliminary Injunction (Doc. 2) is granted. Defendant is enjoined from enforcing K.S.A. § 68-2255 pending resolution of this case. Plaintiff shall post a security bond of one hundred dollars ($100) no later than July 15, 2009.

Dated: June 26, 2009

                                   S/ Julie A. Robinson
                                   JULIE A. ROBINSON
                                   UNITED STATES DISTRICT JUDGE

---

[75]517 U.S. at 503 (citation omitted).